UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN EVANS (B-41234), | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 15 C 2473 |
| MR. BILAL, THOMAS DART, | ) ) | Judge Rebecca R. Pallmeyer |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John Evans ("Evans"), an Illinois prisoner, brought this action *pro se* under 42 U.S.C. § 1983, alleging that he was denied religious services while detained at Cook County Jail. Sheriff Tom Dart has moved for summary judgment. As explained below, the court concludes Plaintiff's complaint must be dismissed. The volunteer chaplain he named as a Defendant is not responsible for any harm to Plaintiff, and the record does not support a finding that his rights were violated. Dart's motion for summary judgment [80] is granted, and the court dismisses claims against Mr. Bilal on its own motion. This case is terminated.

## BACKGROUND

The facts are set forth in parties' submissions pursuant to Local Rule 56.1. Under that Rule, a party seeking summary judgment files "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (quoting N.D. ILL. R. 56.1(a)(3)). The opposing party must then file a response that supports any denials with references to "affidavits, parts of the record, and other supporting materials relied upon." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (quoting N.D. ILL. R. 56.1(b)(3)(B)). A statement in the moving party's submission that is supported by the record and not addressed by the opposing party is deemed admitted. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). A plaintiff's *pro se* status does not excuse him from complying

with these rules. *See Greer v. Bd. of Educ. of City of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven *pro se* litigants must follow rules of civil procedure").

Sheriff Dart filed a statement of uncontested material facts, supported by evidentiary material, as required by the Rule. (Def.'s Stmt. of Material Facts [hereinafter "DSOF"] [85].) He also notified Evans of the requirements of the Rule. (Local Rule 56.2 Notice [83].) Evans's response (Pl.'s Mot. for Relief from Mot. for Summ. J. [hereinafter "Pl.'s Resp."] [87]), however, does not include a response to Dart's version of the facts, nor did Evans submit his own statement of facts. The facts presented by Sheriff Dart are therefore deemed admitted. *See* N.D. ILL. R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).

The record shows that Evans entered Cook County Jail in November 2014 and was housed in Division Eight. (*See* DSOF ¶ 4; Dep. of John Evans, Ex. B to DSOF [85-2], at 18:7–19:8.) Division Eight, also known as Cermak, is a division of the jail that operates as a hospital. (DSOF ¶ 5.) Many detainees in Cermak are disabled, have communicable diseases, or suffer from serious medical conditions. (*Id.*) Because of the specialized needs of Cermak inmates as well as the lack of an appropriate communal space, group religious services are not offered in Cermak. (DSOF ¶ 7.) Instead, a religious volunteer meets individually with inmates. (DSOF ¶ 7.)

Evans, a Muslim, testified at his deposition that he asked to participate in Muslim services on several occasions. (*See* Evans Dep. 20:17–21:3.) He explained that he "wanted to get into the service" and believed he needed to contact Mr. Bilal, who Evans described as "the mumin of

2

the Muslim service[.]" (Evans Dep. 21:21–22:1; see DSOF ¶ 9.)[1] To that end, Evans completed several form requests, selecting Muslim services from various kinds of religious services listed in the form. (DSOF ¶ 10.) The request slips were collected by a social worker and, Evans believes, delivered to Bilal. (Evans Dep. 23:5–25:7; see DSOF ¶ 10.) Evans also gave request slips to fellow inmates and asked that they be delivered to Bilal. (DSOF ¶ 12.) Evans claims that in the two months from January 15, 2015 to March 14, 2015, he submitted 60 to 70 request slips. (DSOF ¶ 11; Evans Dep. 23:12–16.) From its own records, the jail produced copies of nine such request forms. (Inmate Request Forms, Cook County Dep't of Corr., Ex. E to DSOF [85-5].)

When he did not receive a prompt response, Evans submitted a grievance dated February 5, 2015, requesting to "meet with a religious leader from my (faith-base) and to attend religious services with my members." (Inmate Grievance Form (Feb. 5, 2015), Ex. F to DSOF [hereinafter "Feb. 5, 2015 Grievance"] [85-6], at 1; see DSOF ¶ 16.) The grievance was "processed" as a "non-grievance (request)." (See Feb. 5, 2015 Grievance at 1.) Evans did receive a response to the grievance while he was incarcerated at the jail. (DSOF ¶ 18.) The response, signed by "J. Mueller," stated: "All religious services and materials are provided by **volunteers/donation.** The CCDOC does NOT mandate services or religious materials from individuals or groups donating/volunteering their time. Your request was forwarded to the visiting volunteer chaplains." (See Feb. 5, 2015 Grievance at 2–3 (emphasis in original); Aff. of John Mueller, Ex. C to DSOF [85-3], at ¶¶ 17–18.) Evans then sent the grievance to an address in Springfield. (Evans Dep. 28:4–29:15, 31:6-10; see DSOF ¶ 19.) He explained that "at the bottom of the

---

[1] The court understands the word "mu'min" to mean a believer in the Islamic faith. The court does not know why Plaintiff refers to Mr. Bilal as a mu'min. Plaintiff may have intended to refer to Mr. Bilal as the "imam," that is, the leader of worship or prayer, *Glossary of Islam*, WIKIPEDIA, https://en.wikipedia.org/wiki/Glossary_of_Islam (last visited August 2, 2017), or perhaps Mr. Bilal refers to himself as a mu'min rather than an imam.

grievance, it got an address to Springfield. And that's where I sent it to." (Evans Dep. 31:18–32:6.) He submitted no other grievances concerning religious services at the jail. (DSOF ¶ 18.)

Though he was able to practice his faith in other ways, by for example, by praying in his cell (DSOF ¶ 8; Evans Dep. 22:2–8), Evans was not offered a chance to participate in Muslim services with other inmates "[a]nd the mumin, Mr. Bilal." (Evans Dep. 22:11–14; *see* DSOF ¶¶ 6, 8.) He filed this federal lawsuit in March 2015, while incarcerated at the jail. (*See* Compl. [1].) He also filed two other lawsuits around the same time: *Evans v. Dart*, No. 15 C 1826 (N.D. Ill. Mar. 24, 2016) (Pallmeyer, J.), and *Evans v. Brown*, No. 15 C 2295 (N.D. Ill. Mar. 24, 2016) (Pallmeyer, J.). (DSOF ¶¶ 21-22.) In March 2016, Evans entered into a settlement agreement in case numbers 15 C 1826 and 15 C 2295. (DSOF ¶¶ 26–27.) Pursuant to the settlement agreement, Evans released "Defendants, and their agents, employers and former employers, either in their official or individual capacities, from any and all . . . claims . . . that are the subject of the Actions, along with any other claims he might have had at the Cook County Jail arising out of the subject matter of the Actions[.]" (DSOF ¶ 28.)

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court's role in deciding a motion for summary judgment "is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The court considers the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014). Summary judgment is

appropriate "if, on the evidence provided, no reasonable juror could return a verdict in favor of" the non-movant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013).

## **DISCUSSION**

Before proceeding to the parties' arguments, the court pauses to describe the procedural history of this case. Evans initiated this action against the "mumin," Mr. Bilal, complaining that he had not been allowed to attend Muslim services while at the jail and stating that he would "like to pray with fellow members of [his faith]." (Compl. 5.) The court dismissed Evans's original complaint without prejudice for failure to state a claim, noting that it is not necessarily a violation of the First Amendment for a jail inmate to be deprived of access to formal religious services, especially when those services are provided by volunteers. (Order (Apr. 25, 2015) [5].) The court also explained that Evans alleged no facts showing that Bilal was responsible for the jail's failure to hold Muslim services. (*Id.*) Evans submitted an amended complaint, alleging that Bilal "is the person who you send all request form[s] [pertaining] to Muslim studies everything go[e]s through Mr. Bilal." (Am. Compl. [7], at 4.) Evans also alleged that he submitted several requests to attend Muslim services to Bilal as well as a grievance. (*Id.*) According to Evans, he received a response to his grievance from Bilal's "office . . . stating[] religious services and material are provided by volunteers, but still I never got on the list." (*Id.*) Based on Evans's representations, the court allowed the amended complaint to proceed against Bilal. (Order (Jun, 16, 2015) [8].)

For reasons that have never been articulated to the court, Cook County does not represent Bilal in this matter. Bilal (like Evans) is proceeding *pro se*. In that capacity, Bilal answered Evans's amended complaint (Answer [25]), and participated in a telephonic status hearing on June 14, 2016. Bilal explained in the telephone conference that he had no control over whether inmates were permitted or denied leave of worship. (*See* Order (Jun. 14, 2016) [37] (describing events at status hearing).) He also explained that he did not see or respond to

grievances filed by Evans, was unaware of which division of the jail Evans was assigned to, and learned about Evans's claim for the first time when he was served with the summons and complaint. (*Id.* at 1.) Evans, for his part, expressed his belief that Bilal had signed at least one of his grievances. (*Id.* at 2.) The court ordered Evans to "provide copies of grievances to demonstrate Mr. Bilal's involvement in the alleged violation of Plaintiff's rights[,]" and warned that, "[i]f Mr. Bilal's signature does not appear on any grievance, the court is inclined to dismiss this case as against him." (*Id.* at 1–2.) The court continued:

> [E]ven if Mr. Bilal did at some point see or review a grievance filed by Plaintiff, it appears that he had no power to arrange for Plaintiff to attend worship services. If Mr. Evans nevertheless believes he has valid claims against Mr. Bilal, he should explain this in writing within 21 days. Alternatively, if there is another jail official who is responsible for keeping Plaintiff from attending worship services, he is invited to submit an amended complaint identifying such person[s] as Defendants.

(*Id.* at 2.)

By letter dated June 20, 2016, Evans informed the court that he had requested but not yet received copies of his "request slips" and "grievances" from the jail. (Letter from John Evans to Judge Rebecca Pallmeyer, Jun. 20, 2016 [39].) Evans was by then no longer incarcerated at the jail, so the court added Sheriff Dart as a defendant for the "purpose of assisting Plaintiff to identify the jail personnel who participated in the events giving rise to this lawsuit." (Order (Jul. 5, 2016) [40].) The court again expressed its belief that Bilal likely was not a proper defendant to this action and instructed Evans to obtain information from Dart's attorneys so that he could identify proper defendants and amend his complaint. (*Id.* at 1.)

The court subsequently received three documents from Plaintiff. The first document (which crossed in the mail with the July 5, 2016 order) was submitted on an amended complaint form but was stricken because it was a record of Evans's attempts to obtain copies of documents from the jail rather than a pleading. (*See* Am. Compl. [41]; Order (Jul. 7, 2016) [42].) The second document was a letter from Evans, to which he attached the grievance dated February 5,

6

2015, concerning his desire to meet with a Muslim leader and participate in Muslim services; the jail's response was signed by "J. Mueller" and stated that Evans' "request was forwarded to the visiting volunteer chaplains." (Letter from John Evans to Judge Rebecca Pallmeyer, Aug. 8, 2016 [44].) The third document, dated August 28, 2016, was an amended complaint that again named only Bilal as a defendant to this action and was nearly identical in substance to the earlier complaint. (*See* Am. Compl. [48].)

Dart's counsel appeared in this case on September 8, 2016. (Attorney Appearances for Thomas Dart (Sept. 8, 2016) [49, 50].) At the following status hearing, Dart's counsel told the court that she believed the release executed by Evans in the two cases he settled earlier that year requires dismissal of this case, as well. (*See* Minute Order (Oct. 4, 2016) [53].) Because the terms of that settlement agreement, as well as other information necessary to resolution of this case, were outside the personal knowledge of the *pro se* parties, Dart was asked to continue his participation in this action. Dart answered the August 28, 2016 amended complaint (*see* Def. Dart's Answer [55]), and deposed Evans. (*See* Minute Order (Jan. 19, 2017) [67].)

**I.     Dart's Motion for Summary Judgment**

Dart, who has now appeared through counsel, seeks summary judgment against Evans on several bases, including (1) that Evans failed to exhaust administrative remedies concerning his claim that he was denied Muslim services at the jail, and (2) that Evans released his claims in this case pursuant to the terms of a settlement in case numbers 15 C 1826 and 15 C 2295. (Def. Dart's Mem. in Supp. of Summ. J. [hereinafter "Dart MSJ"] [82].) Because exhaustion is a threshold issue that should be addressed before proceeding to any disposition on the merits, *see Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014), the court addresses that issue first.

**A.     Exhaustion**

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined

in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To fulfill this requirement, an inmate must comply with the procedures and deadlines established by the jail's policy. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). That is, the inmate "must file complaints and appeals in the place, and at the time, the [institution's] administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). The Seventh Circuit requires strict compliance with the exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

An inmate is required, however, to exhaust only those administrative remedies "as are available" to him. 42 U.S.C. § 1997e(a); *see Harper v. Dart*, No. 14 C 1237, 2015 WL 3918944, at *3 (N.D. Ill. Jun. 24, 2015). Thus, an inmate must exhaust only those procedures about which he was informed, "meaning that only reasonably publicized procedures must be exhausted." *Harper*, 2015 WL 3918944 at *3. "[T]he jail's stated policy is the key; inmates 'are not required to divine the availability of other procedures.'" *Id.* (quoting *King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015)). Failure to exhaust administrative remedies is an affirmative defense, *Jones v. Bock,* 549 U.S. 199, 216 (2007), so defendant bears the burden of showing that an inmate failed to exhaust, *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011).

It is undisputed that Evans submitted only one grievance concerning his inability to attend Muslim services while at the jail. (DSOF ¶¶ 16, 18.) The grievance was dated February 5, 2015, and a box on the top of the form reflects that the grievance was "processed as" a "non-grievance (request)." (*See* Feb. 5, 2015 Grievance.) Evans received a response to the grievance while he was still at the jail (DSOF ¶¶ 17–18), but it was not to his satisfaction. (Evans Dep. 36:3–8.) He then sent the grievance to Springfield because, he says, that is what the form directed him to do. (Evans Dep. 31:6–32:6.) (The court itself sees no such instruction on the form. (*See* Feb. 5, 2015 Grievance).)

8

Dart argues that Evans admits he did not file another grievance after receiving a response to his initial "non-grievance (request)" but knew—based on other grievances he had filed in other unrelated matters—that he had to take additional steps to exhaust administrative remedies. (Dart MSJ 11.) Dart also suggests that Evans's decision to mail the grievance to Springfield was improper, but Dart does not explain what procedures were mandated to exhaust a grievance that jail personnel processed as a "non-grievance." The grievance form itself provides little guidance; it instructs:

> When a grievance issue is processed as a NON-GRIEVANCE (REQUEST), an inmate *may* re-submit the grievance issue after 15 days to obtain a "Control Number" if there has been no response to the request or the response is deemed unsatisfactory.

(Feb. 5, 2015 Grievance (emphasis added).)

The instruction, by its own terms, is permissive rather than mandatory. *See Camacho v. Dart*, No. 15 C 3396, 2017 WL 680329, at *5 (N.D. Ill. Feb. 21, 2017) ("[T]he jail's stated procedures do not *require* inmates to resubmit grievances treated as requests after they have been denied or ignored.") (emphasis in original). And judges in this district have been reluctant to find that the instruction imposes on inmates a requirement to resubmit "non-grievance (requests)" in order to exhaust administrative remedies. *See, e.g., id.* (finding exhaustion complete after inmate received response even though inmate did not resubmit grievance to obtain control number); *Munoz v. Dawalibi*, No. 14 C 601, 2015 WL 719373, at *6 (N.D. Ill. Feb. 18, 2015) (finding exhaustion complete after inmate submitted two grievances and jail staff decided to handle them as "non-grievance (requests)," "in a manner outside the written grievance procedure"). Evans's conduct on other occasions or in submitting his grievance response to Springfield also does not establish that he was required by jail policy to appeal the "non-grievance (request)." *See Camacho*, 2017 WL 680329, at *6 ("[T]he availability of administrative remedies is not a subjective inquiry dependent on the knowledge of the inmate in question."). Indeed, the

9

appeal section of the response to Evans' grievance had been crossed out (*see* Feb. 5, 2015 Grievance), which is some indication that an appeal was not available. *See Palmer v. Martinez*, No. 15 C 3852, 2016 WL 1407696, at *3 (N.D. Ill. Apr. 11, 2016) ("An inmate could reasonably believe that an 'X' through the appeal section meant he did not have to submit an appeal or that an appeal was not available.").

In this case, Evans used the jail's grievance form to submit what he intended to be a grievance concerning his desire to attend Muslim services. (*See* Evans Dep. 27:11–28:17.) Jail personnel processed Evans's grievance and returned it with the appeals section crossed out. Dart does not explain what additional steps Evans was required to take, if any. Dart therefore has not shown that Evans failed to exhaust available administrative remedies.

### B. Release/Settlement

Dart also contends that the settlement agreement Evans signed to resolve two other lawsuits requires dismissal of this one as well. The court disagrees. The agreement involved claims against Dart and jail employees in other unrelated cases, and released claims only as to "Defendants [to those other actions], and their agents, employers and former employers, either in their official or individual capacities . . . ." (*See* DSOF ¶ 28; Mar. 28, 2016 Settlement Agreement, Ex. 1 to DSOF (filed *in camera*), at ¶ 6.) Dart maintains that Bilal—the only named defendant to this action—was a volunteer at the jail and not an employee. (Def. Dart's Reply Br. [89], at 4.) As such, Bilal falls into none of the categories covered by the release, *see Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462, 706 N.E.2d 882, 884 (1999) (under Illinois law, courts look to plain language of contract to determine parties' intent), and the record contains no evidence from which the court can find otherwise.

## II. Evans's Claim against Defendant Bilal

Having concluded that Evans adequately exhausted remedies and has not settled this case, the court turns to the merits. There is no basis for any claim against Bilal. Evans has

10

presented no evidence—either in response to the June 14, 2016 order or in response to Dart's motion for summary judgment—showing that Bilal received Evans's requests to participate in Muslim services or that Bilal (the volunteer Muslim worship leader) was the person responsible for ensuring that inmates who requested Muslim services at the jail were scheduled to participate in those services. To the contrary, the response to Evans' February 5, 2015 grievance was signed by John Mueller, the Director of Inmate Services at the Cook County Department of Corrections (CCDOC). (*See* Feb. 5, 2015 Grievance; Mueller Aff. ¶¶ 17–18.) In that response, Mueller states that Evans's request was forwarded to the volunteer chaplains, but there is no evidence that Bilal, rather than a shared mailbox or other religious volunteer, ever received it. Bilal, for his part, claims he had no familiarity with Plaintiff before receiving service of process in this case.

Mueller also explained in an affidavit submitted by Dart that "[t]he superintendents and correctional staff within each division of the CCDOC have the responsibility and authority to ensure that all inmates have the ability to practice their religion as freely as possible, consistent with the operational requirements and safety concerns of the inmates and correctional institution." (Mueller Aff. ¶ 6.) Religious services are conducted by volunteers and are subject to each volunteer's schedule and preferences but, Mueller explained, superintendents (not the volunteers) ultimately control the scheduling of religious services, in that services may be provided only where space is available and when security concerns allow. (*See id.* ¶¶ 7, 9.) Group religious services are not offered at Cermak because of space constraints (*id.* ¶ 13), and the scheduling of individual visits by religious volunteers must be coordinated so that the visits do not conflict with the inmate's medical treatment. (*See id.* ¶15.) Thus, even if Bilal had received Evans's requests, Bilal had no authority to ensure that Evans received the services he requested.

As noted, in a telephone conference with Evans and the court on June 14, 2016, Bilal explained that he had no control over whether inmates were permitted or denied leave of worship. (Jun. 14, 2016 Order at 1.) He also explained that he did not see or respond to grievances filed

11

by Evans, was unaware of which division of the jail Evans was assigned to, and learned about Evans' claim for the first time when he was served with the summons and complaint. (*Id.*)

The court previously warned Evans that, "[i]f Mr. Bilal's signature does not appear on any grievance, the court is inclined to dismiss this case as against him." (*Id.* at 2.) Evans has had ample opportunity to demonstrate that his claim was properly brought against Bilal, but has not done so. The court can discern no basis for Evans' belief that Bilal was responsible for his inability to participate in Muslim services. *See Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) (explaining that an individual must have caused or participated in a constitutional deprivation to be held liable under section 1983). Accordingly, Bilal is dismissed from this action with prejudice.[2]

## III. No Denial of Access

If another person was responsible for the alleged constitutional violation in this case, Evans has had the opportunity to identify that person and to amend his complaint accordingly. He did not do so. Instead, he stands by his argument that Bilal was the person responsible for seeing that his requests for Muslim services were fulfilled, that it was Bilal who responded inadequately to his grievance, and that Bilal violated his constitutional rights by depriving him of the opportunity to worship with other detainees at Cook County Jail. (*See* Pl.'s Resp. at 2–3, 9.)

The court notes, however, that even if Evans had properly directed his complaint to the person or entity that deprived him of access to group religious services, summary judgment would nevertheless be appropriate. Individuals retain their First Amendment rights to the free exercise

---

[2] It also is unlikely that Bilal is a state actor in his role as volunteer clergy. *See Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 628 (7th Cir. 1999) (setting forth criteria for determining whether private party is state actor for purposes of section 1983). If Bilal is not a state actor, then Evans cannot recover from Bilal under section 1983. *See London v. RBS Citizens, N.A.,* 600 F.3d 742, 746 (7th Cir. 2010) (explaining that private persons "may not be sued [under section 1983] for merely private conduct, no matter how discriminatory or wrongful") (internal quotation marks omitted).

of religion while incarcerated, and a prison may not place a substantial burden on the free exercise of a central religious belief or practice unless that regulation is a rational means of furthering a legitimate penological interest. *Tarpley v. Allen Cnty.*, 312 F.3d 895, 898 (7th Cir. 2002); *Turner v. Hamblin*, 590 Fed. App'x 616, 619–20 (7th Cir. 2014).[3] If a policy does not place a substantial burden on a prisoner's religious exercise, *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005), or the prison has a legitimate penological interest in restricting the practice, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 351–52 (1987); *McRoy v. Sheahan*, 205 F. App'x 462, 464 (7th Cir. 2006), the claim fails.

Construed in the light most favorable to Evans, his claim is that the prison's failure to provide group religious services to him placed a substantial burden on the free exercise of his religion without a legitimate penological interest. The claim fails on both prongs. First, Evans has produced no evidence that being deprived of group services undermined the central practices of Islam. In *Kaufman*, the Seventh Circuit affirmed summary judgment to the defendant prison where the plaintiff had produced no evidence that a weekly study group was central to his First Amendment-protected practice because the prisoner had access to private study, could consult informally with others who shared his beliefs, and could correspond with persons of his beliefs outside the institution. 419 F.3d at 683. Evans similarly continued to practice his faith privately while he was incarcerated, was in contact with other Muslim inmates, and had the right to be visited privately by a religious leader.[4] His right to religious exercise was not substantially burdened by the prison's policy.

---

[3] Evans does not bring a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000c-1, nor would he be entitled to relief under the Act: Evans is no longer incarcerated—rendering injunctive relief moot—and damages are not available under the statute. *Nelson v. Miller*, 570 F.3d 868, 883–85 (7th Cir. 2009).

[4] There is no indication in the record that Evans ever asked Mr. Bilal to meet with him privately, nor does it appear that Evans sought anything but group practice.

Second, even if Mr. Bilal's group services were central to Evans's religious practice, the prison had legitimate penological interests in security and inmate health that justify the policy of not providing group services to inmates in Cermak. Assuming that Mr. Bilal was available to lead services in Cermak (by no means clear), Sheriff Dart has shown that there were serious obstacles to hosting group services in the hospital unit: Cermak did not have space for group services, and the prisoners located in that unit had significant, individualized medical needs which would have to be managed in a group setting. The Supreme Court addressed the scope of legitimate penological interests in *O'Lone*, where it examined the constitutionality of a prison policy that prohibited prisoners from returning to the main prison building during outside work details, effectively preventing Muslim prisoners from attending weekly Jumu'ah services. 482 U.S. at 346–47. The Third Circuit concluded that the policy significantly burdened a central religious practice and that the state had not demonstrated that it was unable to accommodate the prisoners' religious rights while maintaining security. *Id.* at 347–48. The Supreme Court reversed. The Court explained that courts do not sit as prison administrators, and that prison officials are entitled to a level of deference; a prison official need not "set up and then shoot down every conceivable alternative method of accommodating" prisoners' religious practices. *Id.* at 349–50 (quoting *Turner v. Safley*, 482 U.S. 78, 90 (1987)). The prison had cited a legitimate security interest, the Court observed, in ensuring that prisoners could be appropriately managed during work detail: prison guards would be burdened by the need to determine on a case-by-case basis whether an exception should be made to allow prisoners to return to the main building, and returning to the building caused congestion at the main gate. *Id.* at 351.

The summary judgment record here supports the conclusion that the jail officials' concerns are similarly reasonable, related both to security and to inmate health. There are no facilities for group religious exercises in Cermak. Thus, to allow an inmate housed in Cermak to attend group services, the prison would have to permit the inmate to leave the housing unit.

14

Evans himself was housed at Cermak for just two months. The court is not inclined to find that his rights were violated by a policy that prohibits prisoners with serious medical needs from leaving their hospitalization unit.

## **CONCLUSION**

This case is dismissed with prejudice.

If Plaintiff wishes to appeal, he must file a notice of appeal with this court within thirty days of entry of this order. *See* FED. R. APP. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this court. *See* FED. R. APP. P. 24(a)(1).

Plaintiff need not bring a motion to reconsider this court's ruling to preserve his appellate rights. However, if Plaintiff wishes the court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* FED. R. CIV. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* FED. R. CIV. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* FED. R. APP. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* FED. R. CIV. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* FED. R. CIV. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an

appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment.  *See* FED. R. APP. P. 4(a)(4)(A)(vi).

ENTER:

Date:   August 2, 2017      _____
REBECCA R. PALLMEYER
United States District Judge